**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **7-ELEVEN, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:12-CV-04292-L** |
| | § | |
| **DIGITAL DISPLAY NETWORKS, INC.,** | § | |
| | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the *Order of Reference* dated January 24, 2013, before the Court is Defendant Digital Display Networks, Inc.'s *Motion to Dismiss or, in the Alternative, Motion to Compel Arbitration and for a Stay of the Litigation*, filed December 28, 2012 (doc. 13). Based on the relevant filings and applicable law, the motions should be **DENIED**, but the suit should be **DISMISSED without prejudice**.

## I. BACKGROUND

7-Eleven, Inc. (Plaintiff) is a Texas corporation with its principal office in Dallas, Texas. (Doc. 1 at 1.) Digital Display Networks, Inc. (Defendant) is a Delaware corporation with its principal office in Los Angeles, California. (*Id.*)

On or about October 28, 2008, Plaintiff and Defendant executed a Digital Signage Agreement (DSA) for Defendant to provide a turn-key network of high definition digital video monitors, digital media players, and related components in Plaintiff's retail stores, and to provide digital advertising content on such network. (*See generally* doc. 1 at 8-65.) In the DSA, the parties agreed to enter into a separate ancillary agreement, a Network Services Agreement, that would define terms and conditions of the broadband network ownership and usage. (Doc. 1 at

24.) The DSA also contained an arbitration clause, Section 9(b)(i), in which the parties agreed that disputes[1] would be "exclusively and finally resolved by arbitration administered by the American Arbitration Association (AAA)" in "accordance with the provisions of this Section 9(b)." (Doc. 1 at 32.) It also provided for division of attorney's fees. (Doc. 1 at 33.)

On approximately October 1, 2009, the parties executed a Network Services Agreement (NSA) and noted that the contract was "entered into in furtherance of the [DSA.]" (Doc. 1 at 66.) The NSA featured additional or clarified definitions, service schedules, bandwidth requirements, billing and payment understandings, systemic and technical features, and also network-specific aspects pertaining to the relationship initially created under the DSA. (*See generally*, doc. 1 at 66-87.) The NSA limited Defendant to using Plaintiff's broadband connection "as contemplated by the [DSA]." (Doc. 1 at 69.) In the NSA, the parties also agreed that "[n]othing in [the NSA] is to be construed to limit or otherwise restrict Defendant's rights under the DSA[.]" (*Id.*) Defendant agreed to pay Plaintiff $99 per month, per Plaintiff's retail store broadband connection, as agreed in the DSA. (Doc. 1 at 79.) The NSA did not contain an alternative dispute resolution section, but Section 10.7 provided:

> Governing Law & Jurisdiction. This agreement shall be governed and construed in accordance with the last of the state of Texas, and venue for purposes of seeking injunctions or other actions outside of arbitration that are permitted by section 9(c) shall be the state or federal courts located in Dallas County, Texas.

---

[1] The DSA defines "dispute" as:

> ...any dispute, controversy or claim arising out of or relating in any way, either directly or indirectly, to the Agreement or the applicability, breach, termination or validity thereof, including, but not limited to, (1) assertions as to the inducement of the Agreement by fraud or otherwise and (2) the applicability, interpretation, validity or enforceability of the provisions of the Agreement relating to arbitration and arbitration procedures.

(Doc. 1 at 9.)

(Doc. 1 at 76.) The NSA does not contain a Section 9(c), as referenced, and this section is a mirror image of the DSA's Section 15. (Doc. 1 at 39.)

On October 24, 2012 Plaintiff filed this suit, alleging that Defendant had breached the NSA by failing to pay network fees as agreed, and that as of October 1, 2012, Defendant owed it over $4,600,000. (Doc. 1 at 5.) On December 28, 2012, Defendant moved to dismiss, or in the alternative, to compel arbitration and for a stay of the litigation. (Doc. 13 at 4-5.) While the motions were pending, Defendant filed a notice advising the Court that Plaintiff had filed an arbitration claim, that the claim it raised in the arbitration proceeding was exactly the same claim as the claim alleged in this case, and that the claim was based on the same factual allegations as the claim in this case. (Doc. 17; 17-1 at 5-6.) Plaintiff did not respond or object to the notice.

## II. RULE 12(b)(1) MOTION TO DISMISS

Relying on the arbitration clause of the DSA, Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. (Doc. 13 at 4.)

### A. Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction and "may be raised by a party, or a by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006); *see also* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Fed. R. Civ. P. 12(h)(3) requires

the Court to dismiss the action if it determines that it lacks jurisdiction over the subject matter.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*. When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F. 2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*. Facial attacks are usually made early in the proceedings. *Id*. When evidence is presented with the motion to dismiss, the attack is "factual" and "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the

burden of proof to show it exists. *Ramming*, 281 F.3d at 161. Here, Defendant has not attached any documents to its motion, relying only on the agreements attached to Plaintiff's complaint. Defendant's motion therefore presents a facial attack.

**B. Arbitration Clause**

With regard to motions to dismiss based on an arbitration clause, the Fifth Circuit has not "definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule."[2] *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n. 3 (5th Cir. 2010) (citations omitted). It has "accepted Rule 12(b)(3) as a proper method for dismissal", however. *Id.* In those cases where the movant invoked both Rule 12(b)(1) and Rule 12(b)(3) as a basis for dismissal, the Fifth Circuit has proceeded to analyze the issue under Rule 12(b)(3). *Id.; see also Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005).[3] No Fifth Circuit case appears to have yet accepted Rule 12(b)(1) as a proper basis for dismissal based on an arbitration clause.

Defendant fails to elaborate why subject matter jurisdiction is lacking because Plaintiff's claims are arbitrable. (Doc. 13 at 4-5.) Plaintiff, who bears the burden of establishing jurisdiction, likewise fails to present any argument on the issue of subject matter jurisdiction.

---

[2] There exists a circuit split on whether a court's authority to dismiss a case based on an arbitration clause stems from Rules 12(b)(1), (b)(3), (b)(6), or an entirely separate authority. *See Continental Cas. Co. V. American Nat. Ins. Co.*, 417 F.3d 727, 732 n.5-7 (7th Cir. 2005) (discussing different circuit decisions); *see also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir.1992); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005).

[3] Here, Defendant did not move to dismiss under Rule 12(b)(3) or to otherwise object to venue on the basis of the arbitration clause. This defense has therefore been waived, so the propriety of dismissal under Rule 12(b)(3) is not addressed. *See* Fed. R. Civ. P. 12(h)(1); *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907 (5th Cir. 1993) (ruling that the defendant who "failed to raise its first motion [to dismiss] a specific objection to venue [is] precluded under Rule 12(g) from raising the objection in a second pretrial motion to dismiss"); *King v. Byrne*, 154 F.3d 417, at *1 (5th Cir. 1998) (unpublished) (the defendant's failure to raise improper venue precluded him from raising it subsequently).

(*See* doc. 14 at 4.) Nevertheless, courts have "a continuing obligation to examine the basis for their jurisdiction." *See MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). Some courts have found that a valid arbitration clause does not technically deprive a court of subject matter jurisdiction; it only requires it to "'forego [sic] the exercise of jurisdiction in deference to the parties' contractual agreement.'" *VP, LLC v. Newmar Corp.*, 2012 WL 6201828 (E.D. La. Dec. 12, 2012), quoting *Moore v. Ferrellgas, Inc.*, 533 F.Supp.2d 740, 744 (W.D.Mich.2008) (quoting *Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F.Supp.2d 74, 78 (D.Del.2003)). This reasoning is consistent with the Fifth Circuit's approach in proceeding to analyze motions to dismiss based on an arbitration clause under Rule 12(b)(3) rather than first determining whether jurisdiction existed. In addition, this Court has previously found that "[a] court must have subject matter jurisdiction before it may compel arbitration." *Corporate Relocation, Inc. v. Martin*, No. 3:06-cv-232-L, 2006 WL 4101944, at *6 (N.D. Tex. Sept. 12, 2006) (Lindsay, J.).

The parties in this case do not dispute the existence of diversity jurisdiction under 28 U.S.C § 1332(a). (*See* Doc. 1 at 1.) Accordingly, subject matter jurisdiction exists, and Defendant's Rule 12(b)(1) motion to dismiss should be denied.

## III. RULE 12(b)(6) MOTION TO DISMISS

Defendant also moves to dismiss under Rule 12(b)(6) for failure to state a claim. (Doc. 13 at 4.)

### A. Legal Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6)

standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 679.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Here, Plaintiff attached the relevant agreements to its complaint, so these documents are considered part of the pleadings. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

**B. Arbitration Clause**

As with Rule 12(b)(1), the Fifth Circuit has not determined whether a motion to dismiss based on an arbitration clause is properly brought under Rule 12(b)(6), and Defendant has not cited any cases addressing this issue. Plaintiff's complaint asserts a breach of contract claim and for attorney's fees related to the NSA, and the relevant facts are asserted and supported by documents attached to the complaint. (*See generally* doc. 1.) It "state[s] a claim to relief that is plausible on its face." *Gonzalez,* 577 F.3d at 603. Defendant has failed to show that Plaintiff "can prove no set of facts in support of [its] claim" and also failed to cite any authority. *IBEW-NECA Southwestern Health and Benefit Fund v. Tafoya*, No. 3:00-cv-2683-G, 2001 WL 1042733, at *4 (N.D. Tex. Aug. 29, 2001) ("[T]he movant has not met his burden of showing that there is no set of facts which would entitle the plaintiffs to relief, and his motion to dismiss for failure to state a claim must be denied.") Its motion to dismiss under Rule 12(b)(6) should

therefore be denied.

## IV. MOTION TO COMPEL ARBITRATION

Defendant moves in the alternative to compel arbitration. (Doc. 13 at 5.) Because the parties are presently in arbitration proceedings involving the same claims at issue in this case, (*compare* docs. 1 at 5; 17 at 5-6), Defendant's motion to compel arbitration should be denied as moot.

## V. STAY OF PROCEEDINGS

Defendant also moved to stay the proceedings under Section 3 of the FAA. (Doc. 13 at 5.) Section 3 provides that a court must stay the trial of the action until arbitration is complete if it determines that the claims are properly referable to arbitration, and one of the parties applies for a stay of the proceedings. 9 U.S.C. § 3. When all of the issues before the Court are arbitrable and there are no other reasons to retain jurisdiction over the suit, it may dismiss the action. *See Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir.1992)).

Courts employ a two-step inquiry when determining whether a dispute is arbitrable under the FAA. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). "The first step is to determine whether the parties agreed to arbitrate the dispute in question." *Webb v. Instacorp., Inc.*, 89 F.3d 252, 258 (5th Cir.1996) (per curiam). The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Safer v. Nelson Financial Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005).

In order to decide the first step, the Court "must decide: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Safer*, 422 F.3d at 294 (citations omitted). The parties

do not dispute that the DSA and the NSA are valid contracts, nor do they dispute the validity of the DSA's arbitration clause. (*See* docs. 13 at 5-6; 14 at 2-3.) Therefore, there is a valid arbitration agreement. *Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1066 (5th Cir. 1998) (concluding that an undisputed valid agreement contains a valid arbitration agreement). The parties also agree that there are no external legal constraints under the second step. (*See* docs. 13 at 7; 14 at 4-5.) The remaining issue is whether the parties' dispute falls within the scope of the arbitration agreement.

The scope of an arbitration clause "is answered by applying the federal substantive law of arbitrability." *Graves v. BP America, Inc.*, 568 F.3d 221, 222 (5th Cir. 2009) (internal marks omitted). "This court has repeatedly found that when agreements are interdependent and exist to further a single goal, an arbitration clause in one of the agreements 'reach[es] all aspects of the parties' relationship,' including disputes that might arise out of the other agreement." *Safer*, 422 F.3d at 296 (citations omitted).

Here, it appears that all of the issues before the Court are arbitrable, since the parties are already in arbitration proceedings regarding those same issues. In addition, the DSA delineates the full scope of Plaintiff's and Defendant's rights and responsibilities, including an agreement to enter into a Network Service agreement. (*See* doc. 1 at 24.) Subsequent to executing the DSA, the parties entered into the NSA with the exact monthly fees to be paid by Defendant as agreed in the DSA. (*Compare* doc. 1 at 18, 79.) The NSA is so integrally tied to the DSA that in the event the DSA is terminated, the NSA is terminated automatically. (Doc. 1 at 71.) Although Plaintiff now attempts to assert that the NSA is a distinct and separate agreement (doc. 14 at 5), it admitted that the NSA is an ancillary agreement to the DSA in its complaint. (Doc. 1 at 3); *see Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001) ("A judicial

admission is a formal concession in the pleadings or stipulated by a party or counsel that is binding on the party making them."). Based on the internal references in both the DSA and the NSA as well as Plaintiff's own admission, it is reasonable to conclude that both agreements should be read together as being one contract. *See Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (recognizing that multiple agreements were entered to further a single goal, therefore they were "integral and interrelated parts of the one deal.").

The Fifth Circuit has also ruled that when parties "include[ ] a broad arbitration clause in the essential [agreement] covering 'any and all disputes,' they intended the clause to reach all aspects of the parties' relationship[.]" *Neal*, 918 F.2d at 34. The DSA's arbitration agreement covers all "disputes" as defined by the agreement (doc. 1 at 32). The arbitration clause, then, covers "any" dispute "arising out of or relating in any way, either directly or indirectly" to the DSA. (Doc 1 at 9.) "Therefore, it is not necessary that the dispute arise out of the [DSA] to be arbitrable–but only that the dispute 'relate to' . . . the [DSA]. With such a broad arbitration clause, it is only necessary that the dispute 'touch' matters covered by the [DSA] to be arbitrable." *Pennzoil Exploration and Production Co.*, 139 F.3d at 1068 (citations and internal marks omitted). And breach of the NSA touch the matters covered by the DSA. *Id.*

Because all of the issues raised before the Court are arbitrable, and given that the parties are already in arbitration proceedings, there appears to be no reason to retain jurisdiction. This suit should therefore be dismissed without prejudice. *See Alford*, 975 F.2d at 1164.

## V. RECOMMENDATION

Defendant's motions to dismiss should be **DENIED,** its motion to compel arbitration should be **DENIED AS MOOT,** its motion to stay should be **DENIED,** and the suit should be **DISMISSED** without prejudice.

**SO RECOMMENDED**, on this 4th day of September, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE